UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:16-CR-00104-2-JRG |
| | ) |
| ERIC SINKS | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. In September 2020, the Court denied Defendant Eric Sinks' Motion for Compassionate Release Based on Extraordinary and Compelling Circumstances [Doc. 267] after weighing the relevant factors under 18 U.S.C. § 3553(a). [Mem. Op .& Order, Doc. 275, at 3–7]. First, the Court considered the conditions at FCI Allenwood Low—the facility where Mr. Sinks is serving his sentence—and noted that COVID-19 had not affected that facility to the same degree as other federal facilities throughout the country. [*Id.* at 4–5]; *see United States v. Jones*, 980 F.3d 1098, 1115 (6th Cir. 2020) ("In his compassionate release opinion, the district judge acknowledged that [the defendant] is incarcerated at FCI Elkton (relevant to § 3553(a)(2)(D))[.]"). Second, it considered, under § 3553(a)(1), the nature and circumstances of Mr. Sinks' offense, which it found to be serious. [Mem. Op. & Order at 6].

And lastly, it considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), and it concluded that Mr. Sinks' release would result in unwarranted sentencing disparities among similar defendants because he has served only a fraction of his sentence, [Mem. Op. & Order at 6–7]. The Court, however, miscalculated the exact amount of time that Mr. Sinks has served to date. The Court mistakenly wrote that he has served less than

a fifth of his sentence, but with good-time credit from the Bureau of Prisons, he has actually served a third of his sentence. [Sixth Circuit Order, Doc. 284, at 2]. Because of the Court's miscalculation, the United States moved the Sixth Circuit to remand this case, and the Sixth Circuit granted the United States' motion, remanding the case with instructions for this Court to reweigh the relevant factors under § 3553(a). [*Id.* at 2].

## I. BACKGROUND

In 2017, Mr. Sinks pleaded guilty to conspiring to distribute and possess with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). [Plea Agreement, Doc. 74, at 1; Minute Entry, Doc. 89]. At sentencing, his total offense level was 34 and his criminal history category was IV. [PSR, Doc. 125, ¶ 80; Statement of Reasons, Doc. 228, at 1]. Under § 841(b)(1)(A), he was subject to a mandatory minimum sentence of 120 months' imprisonment, and his guidelines range was 210 months to 262 months. [PSR ¶ 80; Statement of Reasons at 1]. The Court sentenced him to a below guidelines-range sentence of 190 months' imprisonment. [J., Doc. 227, at 2].

Acting pro se, Mr. Sinks, who is forty-two years of age, now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, citing underlying various medical conditions including heart disease, hypertension, and obesity. [Def.'s Mot. at 3]. In response, the United States opposes Mr. Sinks' motion, arguing, among other things, that his release would be inconsistent with § 3553(a)'s factors. [United States' Resp, Doc. 270, at 7, 11]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Sinks' motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider" Mr. Sinks' motion "because Sinks submitted a request for compassionate release to the Bureau of Prisons more than 30 days ago." [United States' Resp. at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *Jones*, 980 F.3d at 1106 (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant.—
>>
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>>> (ii) The defendant is—
>>>
>>>> (I) suffering from a serious physical or medical condition,
>>>> (II) suffering from a serious functional or cognitive impairment, or
>>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of

5

> the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century

6

pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an

7

analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (determining that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court, in its discretion, will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and instead turn to the Center of Disease Control's guidelines in considering whether Mr. Sinks' underlying medical conditions, against the backdrop of the COVID-19 pandemic, are an extraordinary and compelling reason for his release. *See, e.g.*, *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 756–57 (E.D. Mich.), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from" COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Down syndrome
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but $< 40$ kg/m$^2$)
- Severe Obesity (BMI $\geq 40$ kg/m$^2$)
- Pregnancy
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

The United States acknowledges that Mr. Sinks' body mass index is greater than 30.0, and it therefore "agrees that Sinks has shown an extraordinary and compelling reason" for his release under the CDC's guidelines. [United States' Resp. at 9]. The Court therefore finds that Mr. Sinks has identified an extraordinary and compelling reason for his release. But even so, before the Court can conclude that Mr. Sinks is entitled to compassionate release, it must address the additional substantive requirements under § 3582(c)(1)(A), including § 3553(a)'s factors. *Jones*, 2020 WL 6817488 at *5; *see Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)).

In addressing these additional requirements, the Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a)'s factors. *See Jones*, 2020 WL 6817488 at *7, 9 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts,

9

therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

### B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *see* [Statement of Reasons at 3 (noting the factors that the Court considered at sentencing], so it is under no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis is sufficient. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Mr. Sinks' case, the relevant factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1)–(2), (4), (6).

As for the nature and circumstances of Mr. Sinks' offense, he conspired to distribute and possess with the intent to distribute fifty grams or more of methamphetamine—a serious offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense[.]" (citations omitted)); *see generally United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003) (observing that methamphetamine "poses serious dangers to . . . human life" (quotation omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave").

11

In addition, the Court has refamiliarized itself with Mr. Sinks' presentence investigation report and his history and characteristics, and the Court is of the conviction that he would pose a danger to the public if it were to order his release. Mr. Sinks admittedly conspired to distribute a large quantity of methamphetamine—between 150 and 500 grams. [Plea Agreement ¶ 4(f); PSR ¶ 15];[1] *cf. United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (recognizing that a hundred grams of heroin is a "large quantit[y] of drugs"); *United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing a hundred and fifty grams of cocaine base as "a large quantity of narcotics"). And Mr. Sinks' criminal history is relatively lengthy, with six countable points for convictions that include possession of drug paraphernalia, possession of a controlled substance, possession of a controlled substance with intent to sell or deliver, and vandalism.[2] [PSR ¶¶ 36, 38, 40, 41]. In a similar vein, Mr. Sinks has a history of drug use and has tested positive in the past for amphetamines, methamphetamine, cocaine, and marijuana. [*Id.* ¶¶ 40, 66]. Mr. Sinks also received two additional criminal history points under USSG § 4A1.1.(d) because he committed the current offense—that is, his violation of §§ 846 and 841(b)(1)(A)—while serving a state-court sentence. [*Id.* ¶ 44]. Simply, these facts—which chronicle Mr. Sinks' rather lengthy history of drug trafficking in the community—are not facts under which Mr. Sinks can realistically contend that his release would not present a danger to the public.

To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, "courts have generally granted compassionate release only to

---

[1] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

[2] Mr. Sinks etched "rapist," "pervert," and "molester" on his ex-wife's vehicle. [PSR ¶ 41].

12

defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). Mr. Sinks has served less than half of his sentence, and his release would therefore result in a substantial reduction in his sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). A substantial reduction in Mr. Sinks' sentence simply would not reflect the seriousness of his offense, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2); *see Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"). In fact, Mr. Sinks has currently served less than the ten-year minimum sentence that Congress mandated under 21 U.S.C. § 841(b)(1)(A), so if the Court were to grant a reduction in his sentence by ordering his release, it would risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 28 U.S.C. § 3553(a)(6).

Lastly, the Court would be remiss if it did not consider COVID-19's impact on FCI Allenwood Low—a consideration that is relevant to § 3553(a)(2)(D). *Jones*, 980 F.3d at 1115. An inmate's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (stating that "[c]ompassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Bothra*, No. 20-1364, 2020 WL

13

2611545, at *2 (6th Cir. May 21, 2020) (noting that courts have "been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason" (citations omitted)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)).

Infections from COVID-19 have gradually increased at FCI Allenwood Low over the past few months. The Federal Bureau of Prisons ("BOP") reports five active cases among the inmates and fourteen active cases among the staff there.[3] *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Jan. 19, 2021). Still, the number of infections at FCI Allenwood Low are a far cry from those that other federal facilities are now experiencing. For instance, Lexington FMC, USP Lee, and USP Yazoo City have 370, 148, and 138 infections among inmates, respectively. *Id.* Even so, Mr. Sinks urges the Court "not [to] accept that the BOP's efforts have been or can be adequate to control the spread of the virus and protect inmates." [Def.'s Mot. at 11]. He insists "the BOP is not doing enough in every prison to stem the spread" and "[t]here is absolutely no possibility of complying with CDC guidelines which call for social distancing." [*Id.* at 10].

But Mr. Sinks, with these broad-based assertions, is expressing only a generalized fear of the virus, nothing more. *See Carr*, No. 20-5784 at *4 (stating that the defendant's "allegations involving the BOP's failure to respond adequately to the risks posed by Covid-19 are the sort

---

[3] In September 2020, FCI Allenwood Low had no active cases. [Mem. Op. & Order at 5].

14

of 'generalized fears' that courts have found do not constitute extraordinary and compelling reasons for compassionate release" (citations omitted)); *Raia*, 954 F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)). Mr. Sinks simply provides the Court with no specific or reliable indication that the BOP has failed to take swift, appropriate, and effective measures to quarantine the infected inmates and staff at FCI Allenwood Low. Section 3553(a)(2)(D), and all the applicable factors under § 3553(a), therefore weigh against Mr. Sinks' release.

### III. CONCLUSION

The Court sympathizes with Mr. Sinks' concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because the relevant factors under § 3553(a) militate against his release. Mr. Sinks' Motion for Compassionate Release Based on Extraordinary and Compelling Circumstances [Doc. 267] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE